UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Mary Hersey</u>

    v.                                                           Civil No. 10-cv-486-LM

<u>WPB Partners, LLC</u>

## **O R D E R**

In an order dated January 5, 2011, doc. no. 10, the court directed WPB Partners, LLC ("WPB") to show cause why this action should not be remanded back to the Superior Court for lack of subject-matter jurisdiction. The issue is whether petitioner's claim meets the amount-in-controversy requirement established by 28 U.S.C. § 1332. After careful consideration of WPB's memorandum of law, the court determines that this case must be remanded.

This suit arises from Mary Hersey's attempt to block WPB from foreclosing on a mortgage on a property Hersey used to secure a note on which she is allegedly in default.[1] In her initial state-court filing, captioned "Petition to Enjoin Foreclosure Sale and for W.P.B. to Provide Full Accounting,"

---

[1] Hersey secured the loan from Investment Realty Funding ("IRF") in December of 2006. Certified Record (doc. no. 3, hereinafter "CR") 9. WPB acquired Hersey's note in August of 2009. CR 10. The amount of the loan was $350,000. CR 9. According to WPB, the property securing the note has an assessed value of $261,000. Resp't's Mem. of Law (doc. no. 12) 1-2.

1

Certified Record (doc. no. 3, hereinafter "CR") 8, Hersey asked the Carroll County Superior Court to: (1) "[e]njoin the scheduled Foreclosure Sale presently scheduled for October 22, 2010;" Certified Record (doc. no. 3, hereinafter "CR") 12; and (2) "[o]rder the Respondent's to provide a full and accurate accounting as requested in paragraph 41 above," id.  Paragraph 41, in turn, states:

> That given the totality of the circumstances Hersey seeks an order from the Court enjoining the foreclosure sale and an order requiring WPB to provide full and complete accounting of:
>
> 1. the disposition of all monies paid out at the time of the closing with IRF and
>
> 2. all payments, interest, fees, costs, charges, etc. which either IRF and/or WPB assessed, charged, collected, etc.

CR 12.  Rather than identifying any legal basis for her request for an accounting, Hersey says she is pursuing an "equity request for an accounting and an injunction."  Pet'r's Obj. (doc. no. 9) ¶ 12.

Apparently operating under the assumption that Hersey was pressing a claim for breach of contract,[2] the Superior Court did,

---

[2] Specifically, the court determined that "the plaintiff has shown a likelihood of successfully proving that she contracted for the full amount of the note secured by the mortgage at issue, but that the lender was unable or unwilling to complete the lending, ultimately failing to provide approximately $80,000 of the sums bargained for."  CR 31.  Based on the following, drawn from Hersey's state-court petition, there is another plausible legal basis for her request for injunctive relief:

2

in fact, "order the postponement of the foreclosure sale scheduled for the subject property until after the merits are heard and decided." CR 32. Thereafter, WPB removed the case to this court. Here, Hersey has expressly disavowed any claim for breach of contract, violation of section 397-A of the New Hampshire Revised Statutes Annotated, or predatory lending. Pet'r's Obj. ¶ 12.[3] Given that disavowal, there are not merits for this court to hear or decide. Thus, it would appear that Hersey's case now consists of nothing but her so-called "equity request" that "before the Respondent is permitted to foreclose . . . the Respondent provide an accounting and prove that the Petitioner in fact received the demanded monies and that the

---

> That were WPB allowed to proceed with the foreclosure Hersey would almost certainly lose a property which is irreplaceable and while Hersey may prevail in an anticipated predatory lending suit [she] would not be able to be made whole as the subject family real estate would have been transferred/sold to the winning bidder at the planned foreclosure.

CR 12.

[3] In the interest of completeness, the court notes that in her "General Objection to Defendant's Motion to Dismiss," filed pro se, Hersey stated that "the pleading [she] filed in the Carroll County Superior Court . . . does set forth a breach of contract, and does set forth a claim for predatory lending." Doc. no. 7 ¶ 4. But, her subsequent objection, filed by counsel, states: "The Petitioner has not yet alleged any causes of action of breach of contract, violations of NH RSA 397-A and, predatory lending." Pet'r's Obj. ¶ 12.

records of Investor Realty Trust are in fact accurate." Id. ¶ 3.

In its response to the court's show-cause order, respondent identifies Richard C. Young & Co. v. Leventhal, 389 F.3d 1 (1st Cir. 2004), as the controlling case on the question before the court. In Leventhal, the plaintiff sought a declaration that its agreement with the defendants required arbitration between them to take place in Boston, and further sought an injunction against an arbitration proceeding begun by the defendants in California. Id. at 2. The amount in controversy in the arbitration was $59,703.56, id. at 3, and the plaintiff's cost to arbitrate in California was $30,000, id. In determining that the district court had subject-matter jurisdiction under 28 U.S.C. § 1332, the court of appeals noted "that the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover but by the judgment's pecuniary consequences to those involved in the litigation." Id. (citations omitted). To support its conclusion that the plaintiff's costs of travelling to California to arbitrate were properly included in the calculation of the amount in controversy, the court cited Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 347 (1977), for the proposition that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is

4

measured by the value of the object of the litigation." Leventhal, 389 F.3d at 3.

Based on Leventhal, WPB argues that the amount in controversy exceeds $75,000 because Hersey is seeking to block its efforts to foreclose on a property worth more than $200,000, which secures a note on which it claims to be owed more than $400,000. If the injunction granted by the Superior Court were at issue in this court, then WPB's argument would be sound. But, that injunction is not at issue. The Superior Court enjoined WPB's sale of Hersey's property pending a decision on the merits of Hersey's claims against WPB. As Hersey made clear in her response to respondent's motion to dismiss, she currently has no claims against WPB other than her request for an accounting. Without a substantive claim to resolve on the merits, such as, for example, a claim for breach of contract, there is nothing pending in this court that could possibly result in a decision that would either lift or make permanent the injunction that is currently in place. Because that injunction is not an object of this litigation, the legal principles described in Leventhal are not applicable to this rather unusual case.

Turning, then, to what is still before the court, the only object of Hersey's litigation is her request for an accounting

from WPB.[4]  While the injunction the Superior Court imposed is relatively easy to value – it protects over $200,000 of Hersey's property – the value of Hersey's requested accounting is not so easy to ascertain.  Her petition offers little guidance for valuing the accounting she seeks, and WPB does not even address its value, much less explain how that value crosses the jurisdictional threshold.  Necessarily, WPB has identified no First Circuit authority for the proposition that the accounting Hersey seeks is even susceptible of valuation, much less valued at more than the jurisdictional limit.[5]  One thing, however, is

---

[4] The court notes in passing that the certified record from the state court contains nearly 70 pages of documentation pertaining to Hersey's loan, including: the promissory note, CR 46-48; the mortgage, CR 50-66; more than thirty monthly billing statements from IFR, CR 68-101; a document titled "Borrower's Ledger Card," CR 103; a document titled "Payment History," CR 104; a document titled "Construction Loan Disbursement Schedule," CR 108-110; WPB's "Default & Final Demand Notice," CR 112-13; and WPB's "Notice of Default and Demand," CR 115-17.

[5] In Perilstein v. United Glass Corp., Judge Dalzell of the Eastern District of Pennsylvania ruled that where shareholders alleged that their stock lost millions of dollars in value, their action seeking an order, under both common law and state statutory law, allowing them to inspect corporate books and records met the amount-in-controversy requirement, 213 F.R.D. 252, 253-54 (E.D. Pa. 2003).  And, in Rockwell v. SCM Corp., Judge Duffy of the Southern District of New York held that where a shareholder contemplating a proxy fight owned stock valued in excess of the statutory threshold, his action to compel the company, under both common law and statutory law, to provide him with a shareholder list met the amount-in-controversy requirement, 496 F. Supp. 1123, 1124-25 (S.D.N.Y. 1980). Neither Perilstein nor Rockwell are the law of this circuit but, more importantly, those cases differ from this one in the following fundamental way: in both of those cases, the court

certain: no decision the court could make on that request would have any direct "pecuniary consequences to those involved in the litigation." Leventhal, 389 F.3d at 3. At best, the pecuniary consequences of the accounting are indirect and ill-defined, given that the accounting is unconnected to any pending legal claim, and that Hersey's request for that accounting has no legal basis. This court's equity powers are not so broad as to authorize a free-floating request for information that is essentially a request for discovery on a non-existent legal claim. In sum, WPB has not carried its burden of demonstrating that this court has subject-matter jurisdiction over Hersey's "equity request" for an accounting. See Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 49 n.3 (1st Cir. 2009) (describing, in case involving jurisdictional challenge based on the amount in controversy, the removing defendant's "burden of alleging with sufficient particularity facts that it is not a legal certainty indicating that the claim involves less than the jurisdictional amount") (quoting Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001) (internal quotation marks omitted).

---

placed a value on the plaintiffs' articulated legal claims, while here, Hersey has identified no legal basis, statutory or otherwise, for her request for an accounting. Thus, notwithstanding the value of the property Hersey seeks to protect, that property only becomes the object of litigation through the vehicle of a legal theory and here, there is none. Accordingly, even were the court inclined to adopt the reasoning of Perilstein and Rockwell, they are materially distinguishable.

Accordingly, this case is remanded to the Carroll County Superior Court.  See United States v. Pomales-Lebrón, 513 F.3d 262, 269 (1st Cir. 2008) ("Because federal courts are powerless to act in the absence of subject matter jurisdiction, [this court has] an unflagging obligation to notice jurisdictional defects and to pursue them on [its] own initiative.") (citations omitted); see also 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date: February 8, 2011

cc:  Lexis Rojas, Esq.
     Christopher J. Seufert, Esq.
     Christopher J. Somma, Esq.